# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES ASSOCIATION<br>OF REPTILE KEEPERS, INC., et al.<br><br>    Plaintiffs,<br><br>v.<br><br>THE HONORABLE SALLY JEWELL, et al.<br><br>    Defendants. | Case No. 1:13-cv-02007-RDM |

## PROPOSED

### *AMICUS CURIAE* BRIEF OF THE CENTER FOR INVASIVE SPECIES PREVENTION, NATURAL AREAS ASSOCIATION AND THE WILDLIFE SOCIETY IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

Dated: April 22, 2015

Respectfully submitted,

/s/_____

Peter T. Jenkins
(D.C. Bar No. 477229)
Counsel for *Amici Curiae*
4507 Maple Avenue
Bethesda, MD 20814
Phone (301) 500-4383

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………… ii

CORPORATE DISCLOSURE STATEMENT…………………………………….. v

INTERESTS OF THE *AMICI CURIAE*………………………………………………... 1

SUMMARY OF ARGUMENT……………………………………………………… 3

ARGUMENT…………………………………………………………………………… 4

    I.       Background……………………………………………………………. 4

    II.      *Amici* Have Strong Interests in the Application of
           18 U.S.C. §42(a)(1) to Interstate Commerce, as Congress Intended……….. 5

    III.     *Amici* Have Interests in Pending Regulatory Proposals
           that Will Be Potentially Injured by the Outcome of this Case……………… 7

    IV.     A Strong Public Interest is Associated with Continued Implementation
           of the Full Final Rules for the Eight Listed Snakes………………………… 9

CONCLUSION……………………………………………………………………… 12

# **TABLE OF AUTHORITIES**

                                                                                        **PAGE(S)**

**FEDERAL CASES**

*Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011)………………………….....  9, 12

**STATUTES**

18 U.S.C. §42(a)(1)……………………………………………………………………  3, 4, 5, 6, 7, 12, 13

**OTHER AUTHORITIES**

50 C.F.R. §16.13(a)(3)……………………………………………………………………….  7

73 Fed. Reg. 5784 (Jan. 31, 2008)……………………………………………………………  4

75 Fed. Reg. 56975 (Sept. 17, 2010)………………………………………………………...  8

Asian Carp Regional Coordinating Committee, *Asian Carp Control Strategy Framework* (2013), *available at* http://www.asiancarp.us/documents/2013Framework.pdf (last visited Apr. 11, 2015)…………  6

Comments of NECIS organizations to USFWS on large constrictor snakes, Docket No. FWS-R9-FHC-2008-0015; of Apr. 30, 2008 *available at* http://www.regulations.gov/#!documentDetail;D=FWS-R9-FHC-2008-0015-1292; of May 10, 2010, *available at* http://www.regulations.gov/#!documentDetail;D=FWS-R9-FHC-2008-0015-2890; of July 24, 2014, *available at* http://www.regulations.gov/#!documentDetail;D=FWS-R9-FHC-2008-0015-8244 (all last visited Apr. 21, 2015)…………………………………………………………….. 4

Lynn Corn and Renée Johnson, Cong. Res. Serv., R43258, *Invasive Species: Major Laws and the Role of Selected Federal Agencies* (Oct. 24, 2013) *available at* http://nationalaglawcenter.org/wp-content/uploads/assets/crs/R43258.pdf (last visited Apr. 21, 2015)……………………………………………………………….  6

Defenders of Wildlife, *Broken Screens - The Regulation of Live Animal Imports in the United States* (2007), *available at* www.defenders.org/publications/broken_screens_report.pdf (last visited Apr. 11, 2015)………………………………………………………………..  11

Michael E. Dorcas et al., *Severe mammal declines coincide with proliferation of invasive Burmese pythons in Everglades National Park*. 109 Proc. Nat'l Acad. Sci. 2418-2422 (2012), *available at* http://www.pnas.org/content/109/7/2418.full.pdf, (last visited Apr. 11, 2015)………..…………………………………………………...  11

PAGE(S)

**OTHER AUTHORITIES, CONT'D**

Rodrigo B. Ferreira et al., *Global assessment of establishment success for amphibian and reptile invaders.* 39 Wildlife Research 637-640 (2012), *available at* http://www.academia.edu/4230511/Ferreira_et_al._2012-_Global_assessment_of_establishment_success_for_amphibian_and_reptile_invaders (last visited Apr. 11, 2015)……………………………………………………………… 10

Clyde Haberman, *The snake that's eating Florida.* New York Times. Retro Report. Article and online video, (Apr. 6, 2015), *available at* www.nytimes.com/2015/04/06/us/the-burmese-python-snake-thats-eating-florida.html (last visited Apr. 11, 2015)……………………………………………………………. 11

Jim Malewitz, *States seek federal crackdown on mussel invaders.* USA Today (Aug. 5, 2013), *available at* www.usatoday.com/story/news/nation/2013/08/05/mussel-invaders-cost-billions/2618669/ (last visited Apr. 11, 2015)……………………………………………………………. 6

NBC6 (Miami, FL) News, *Invasive Rock Pythons South Florida's Newest Threat*, Television news and article (Dec. 20, 2013), *available at* http://www.nbcmiami.com/news/Invasive-Rock-Pythons-South-Floridas-Newest-Threat-236697881.html (last visited Apr. 11, 2015)……………………………………………………………… 9

David Pimentel et al., *Update on the environmental and economic costs associated with alien invasive species in the United States.* 52 Ecol. Econ. 273-288 (2005), *available at* http://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=1037&context=nwrcinvasive (last visited Apr. 11, 2015)……………………………………………………………... 2

Robert Reed and Gordon Rodda. *Giant constrictors: biological and management profiles and an establishment risk assessment for nine large species of pythons, anacondas, and the boa constrictor:* U.S. Geological Survey Open-File Report 2009–1202 (2009), *available at* http://pubs.usgs.gov/of/2009/1202/pdf/OF09-1202.pdf (last visited Apr. 21, 2015)…………………………………………………….…… 5

Andrew Revkin, *Riled herpetologists press Obama Administration to protect America's salamanders from a fungal threat.* New York Times, DotEarth (Mar. 21, 2015), *available at* http://dotearth.blogs.nytimes.com/?_r=0 (last visited Apr. 11, 2015)……………………………………………………………... 9

 **PAGE(S)**

**OTHER AUTHORITIES, CONT'D**

R. Graham Reynolds et al., *Genetic analysis of a novel invasion of Puerto Rico by an exotic constricting snake.* 15 Biological Invasions 953-959 (2013), *available at* http://pubs.er.usgs.gov/publication/70039860 (last visited Apr. 11, 2015)………………….  10

USFWS, *Fact Sheet – The Cost of Invasive Species* (undated), *available at* http://www.fws.gov/home/feature/2012/pdfs/CostofInvasivesFactSheet.pdf (last visited Apr. 11, 2015)……………………………………………………………….…  2

USFWS, *Fact Sheet - Species Listed as Injurious Wildlife under the Lacey Act (50 CFR 16)* (undated), *available at* http://www.fws.gov/injuriouswildlife/pdf_files/Current_Listed_IW.pdf (last visited Apr. 11, 2015)……………………………………………………………….…  5

USGS, *Snakeheads FAQs. "How did snakeheads get into the United States?"* (undated), *available at* http://www.usgs.gov/faq/categories/9787/3000%20 (last visited Apr. 11, 2015)………………………………………………………………..  6

U.S. Nat'l Park Serv., *Fact Sheet - Burmese Pythons* (undated), *available at* http://www.nps.gov/ever/learn/nature/burmesepythonsintro.htm (last visited Apr. 11, 2015)……………………………………………………………….  4

White House Office of Management and Budget, *Injurious Wildlife Species; Listing 10 Freshwater Fish and 1 Crayfish, Proposed Rule Stage*, RIN:1018-AY69, Unified Agenda of Regulatory and Deregulatory Actions (Fall 2014), *available at* http://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201410&RIN=1018-AY69 (last visited Apr. 11, 2015)……………………………………………………………….  8

## CORPORATE DISCLOSURE STATEMENT

Pursuant to LCvR 7.1, *Amici* Center for Invasive Species Prevention, Natural Areas Association and The Wildlife Society are all nonprofit corporations, have no parent corporations and do not issue stock.

Dated: April 22, 2015.                              Respectfully submitted,

/s/_____

Peter T. Jenkins
(D.C. Bar No. 477229)
Counsel for *Amici Curiae*
4507 Maple Avenue
Bethesda, MD 20814
Phone (301) 500-4383

## INTERESTS OF THE *AMICI CURIAE*

*Amicus Curiae* **Center for Invasive Species Prevention** (CISP), is a small Maryland non-profit corporation, managed by science and policy professionals, that strives to advance policy and non-governmental approaches to prevent the introduction and spread of invasive species in the United States. CISP works through engaging stakeholders, educating the public and decision-makers and advocating for effective measures to government officials. Its prevention work is focused in the following areas: forest pests and tree pathogens, and invasive animals and wildlife pathogens.

*Amicus Curiae* **Natural Areas Association** (NAA) is an international non-profit organization dedicated to serving natural area professionals. Based in Bend, Oregon, its mission is to advance the preservation of natural diversity. NAA's broad and diverse membership includes government and non-governmental land and resource managers, conservationists, biologists, ecologists, researchers, land trusts, educators, students and others who care about conservation and management of natural areas.

*Amicus Curiae* **The Wildlife Society**, founded in 1937, is a non-profit scientific and educational association of more than 9,000 professional wildlife biologists and managers in every State dedicated to excellence in stewardship through science and education. Headquartered in Bethesda, Maryland, The Wildlife Society's mission is to inspire, empower and enable wildlife professionals to sustain wildlife populations and habitats through science-based management and conservation.

All *Amici* are conservation or scientific organizations that belong to the National Environmental Coalition on Invasive Species (NECIS). This is an unincorporated coalition founded in 2002 with the Mission Statement of (in pertinent part): *promot[ing] sound state,*

1

*federal, and international policy that prevents harmful non-native, or invasive, species from being introduced, becoming established, and spreading in the United States...*

*Amici* have advocated for strong prevention policies in view of the tremendous harm invasive species of plants and animals have done – and still do – to America's environments, its economic interests and in some case to public health and safety. Much of the attention of *Amici* centers on the protection of our native species from harms resulting from new non-native species invasions. This harm can take the form of direct predation, habitat degradation, competition, genetic swamping, disease transmission and other harms. Almost 25% of all listings of native species as threatened or endangered under the Endangered Species Act (ESA) identify harm from invasive species as a contributing factor.[1]

With respect to the economic damage that also drives *Amici*'s involvement in this arena, it is estimated that the United States suffers over $100 billion annually in cumulative economic losses and expenditures attributable to all varieties of invasive pests, weeds, and plant and animal pathogens. A major portion of that - tens of billions of dollars annually - is attributable to the full historical suite of invasive animals and associated animal pathogens now in the country.[2] For example, in 2011 alone, the Department of the Interior spent close to $100 million on invasive species prevention, early detection and rapid response, control and management, research, outreach, international cooperation and habitat restoration.[3] Close to $80 million of that was

---

[1] United States Fish and Wildlife Service (USFWS), *Fact Sheet – The Cost of Invasive Species* (undated), *available at* http://www.fws.gov/home/feature/2012/pdfs/CostofInvasivesFactSheet.pdf  (last visited Apr. 11, 2015)

[2] David Pimentel et al., *Update on the environmental and economic costs associated with alien invasive species in the United States.* 52 Ecol. Econ. 273-288 (2005), *available at* http://digitalcommons.unl.edu/cgi/viewcontent.cgi?article=1037&context=nwrcinvasive (last visited Apr. 11, 2015)

[3] USFWS, *Fact Sheet – The Cost of Invasive Species, supra* note 1.

spent on preventing further spread of just one set of injurious animals listed under the Lacey Act, the Asian carps. *Amici* are very concerned with avoiding these types of massive losses and expenditures that would have been unnecessary had proactive prevention policies been applied in the first instance.

*Amici* organizations strongly support the listings of the eight large constrictor snake species at issue. They joined on various of the detailed public comments that the NECIS Coalition filed in 2008, 2010 and 2014, urging prompt regulatory action by the U.S. Fish and Wildlife Service (USFWS).[4]

Finally, none of the situations described in the Federal Rules of Appellate Procedure, Rule 29(c)(5)(A), (B), or (C), apply to *Amici*'s Brief.

## SUMMARY OF ARGUMENT

The authority of the USFWS to regulate interstate commerce, in addition to international imports, under 18 U.S.C. §42(a)(1) has been essential to its implementation for many decades. A ruling here declaring that authority to be *ultra vires* would be devastating to implementation of 27 current regulatory listings amounting to at least 243 injurious species, and also devastating to several pending Petitions and proposals for new listings. This would expose *Amici* and the American public to more environmentally and economically harmful invasions mediated by interstate transport of captive-bred or resident wild populations of listed injurious animals.

---

[4] Comments of NECIS organizations to the USFWS on large constrictor snakes, Docket No. FWS-R9-FHC-2008-0015; of Apr. 30, 2008 *available at* http://www.regulations.gov/#!documentDetail;D=FWS-R9-FHC-2008-0015-1292; of May 10, 2010, *available at* http://www.regulations.gov/#!documentDetail;D=FWS-R9-FHC-2008-0015-2890; of July 24, 2014, *available at* http://www.regulations.gov/#!documentDetail;D=FWS-R9-FHC-2008-0015-8244 (all last visited Apr. 21, 2015)

Nothing in the wording, implementation or legislative history of 18 U.S.C. §42(a) (1) indicates Congress intended to limit the law in such a way so as to render it so ineffective. Further, absent the fully-effective listings for the eight constrictor snakes species involved here, risks of more constrictor snake invasions and environmental and economic harm will continue, as well as serious public safety concerns stemming from these potentially deadly animals.

## ARGUMENT

### I. Background

This case is about the long efforts by the USFWS to list nine large constrictor snakes as "injurious species" under the Lacey Act, 18 U.S.C. §42(a)(1), specifically: Indian python (*Python molurus*, including Burmese python *P. molurus bivittatus*), reticulated python (*Broghammerus reticulatus* or *P. reticulatus*), Northern African python (*P. sebae*), Southern African python (*P. natalensis*), boa constrictor (*Boa constrictor*), yellow anaconda (*Eunectes notaeus*), DeSchauensee's anaconda (*E. deschauenseei*), green anaconda (*E. murinus*) and Beni anaconda (*E. beniensis*). The regulatory process began in 2006 with a Petition filed by the South Florida Water Management District (SFWMD).[5] This was in response to environmental degradation and the extensive SFWMD costs associated with the Burmese python invasion in the Everglades and surrounding lands in south Florida, where it was first documented as an established breeding population in 2000.[6]

---

[5] USFWS Notice of Inquiry, 73 Fed. Reg. 5784 (Jan. 31, 2008)
[6] U.S. Nat'l Park Serv., *Fact Sheet - Burmese Pythons* (undated), *available at* http://www.nps.gov/ever/learn/nature/burmesepythonsintro.htm (last visited Apr. 11, 2015)

In 2009, Federal reptile experts with the U.S. Geological Survey (USGS), after study and analysis, concluded that all nine species presented a high or medium risk of becoming invasive within the United States.[7]

### II.   *Amici* Have Strong Interests in the Application of 18 U.S.C. §42(a)(1) to Interstate Commerce, as Congress Intended

Two of USARK's Prayers for Relief, based on *COUNT ONE (Ultra Vires, Lacey Act, 18 U.S.C. § 42, via the APA)* and *COUNT TWO (Declaratory Judgment Act, APA, Lacey Act, United States Const.)* are extremely far-reaching and would largely sweep away many decades of Lacey Act regulation of injurious, invasive non-native animals. Second Amended Complaint, ¶¶ 103 through 117. ECF No. 27-1. USARK has prayed for a Judgment, *inter alia*:

> *(b) Declaring, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that Defendants lack legal authority to ban on interstate transportation or commerce in the listed species within the continental United States;*
>
> *(c) Declaring, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, Defendants' purported ban on interstate transportation and commerce in the listed species to be ultra vires and contrary to law;*

If that relief is granted with respect to constrictor snakes, then all of the other interstate commerce restrictions in the 27 injurious species listings under 18 U.S.C. §42(a)(1), comprising more than 243 species in total, would all also be *ultra vires* and, in effect, would be vacated.[8]

---

[7] Robert Reed and Gordon Rodda. *Giant constrictors: biological and management profiles and an establishment risk assessment for nine large species of pythons, anacondas, and the boa constrictor:* U.S. Geological Survey Open-File Report 2009–1202. ("USGS Report") *available at* http://pubs.usgs.gov/of/2009/1202/pdf/OF09-1202.pdf  (last visited Apr. 21, 2015)

[8] USFWS, *Fact Sheet - Species Listed as Injurious Wildlife under the Lacey Act (50 CFR 16)* (undated), *available at* http://www.fws.gov/injuriouswildlife/pdf_files/Current_Listed_IW.pdf . (last visited Apr. 11, 2015). That Fact Sheet is not current with the four additional large constrictor snake listings in the present case, thus they are added. The resulting 243 species total listing is approximate, as several listings were done at higher taxonomic levels. Further, the total excludes the disease-free certification listing for all salmonid fish, which is unique among the other listings for its broad scope.

This would clearly contravene the intent of Congress. Many well-known examples exist of listed, highly invasive, species for which the restrictions against interstate commerce are vital to prevent their further spread throughout the nation: Asian carp that threaten to enter and devastate the Great Lakes (bighead carp was listed by Congress directly)[9]; zebra mussels that have caused nationwide damage to aquatic systems and continue to spread to more States (listed by Congress directly)[10]; the Northern snakehead fish, which also continues to spread[11]; and others. Those species listed already were scattered within the nation at the time of their listing – their danger lay not primarily from further imports from overseas, but from interstate movement within the nation. The bighead carp and zebra mussel species that Congress listed directly were clearly for the purpose of restricting their further dissemination around the country.[12]

If the law were not applied so as to regulate interstate commerce, then existing stocks of harmful injurious species would be able to be captive bred here, such as is true for the large constrictor snakes, or specimens can be taken directly from resident wild populations, such as the Asian carps, and then be freely transported around the nation. That would render future regulations on international imports of many injurious species largely pointless, as well as extremely difficult to enforce against illegal specimens smuggled into the country.

---

[9] Asian Carp Regional Coordinating Committee, *Asian Carp Control Strategy Framework* (2013), p. 49 (recounting interstate commerce restrictions and enforcement efforts), *available at* http://www.asiancarp.us/documents/2013Framework.pdf (last visited Apr. 11, 2015)
[10] Jim Malewitz, *States seek federal crackdown on mussel invaders.* USA Today (Aug. 5, 2013), *available at* http://www.usatoday.com/story/news/nation/2013/08/05/mussel-invaders-cost-billions/2618669/ (last visited Apr. 11, 2015)
[11] USGS, *Snakeheads FAQs. "How did snakeheads get into the United States?"* (undated), *available at* http://www.usgs.gov/faq/categories/9787/3000%20 (last visited Apr. 11, 2015)
[12] See, Lynn Corn and Renée Johnson, Cong. Res. Serv., R43258, *Invasive Species: Major Laws and the Role of Selected Federal Agencies* (Oct. 24, 2013), p. 8 (18 U.S.C. § 42(a)(1) regulates interstate shipments in addition to imports) *available at* http://nationalaglawcenter.org/wp-content/uploads/assets/crs/R43258.pdf  (last visited Apr. 21, 2015)

It appears that only one of the 27 injurious species listings is by its terms limited to international imports, with all the others regulating both imports and interstate commerce. (It should be noted that 18 USC §42(a)(1) gives the Secretary of the Interior authority to regulate at the import stage "or" the interstate commerce stage; regulating at both stages is not mandatory.) That unique one is the disease prevention listing for "all salmonids" at 50 C.F.R. §16.13(a)(3), which involves certifying that salmon and trout imported from other countries are free of listed fish pathogens.

For the last twelve years *Amici* organizations and personnel working through the NECIS Coalition have called for more comprehensive protection from injurious foreign animal species. *Amici* have advocated for listings of many other injurious species beyond the constrictor snakes involved in this case. However, the direct effect of the two USARK's Prayers of Relief, *supra* would be to, instead, dramatically <u>diminish</u> the scope and effect of injurious species regulatory listings and thereby expose *Amici*'s members, and the U.S. public as a whole, to more harmful invasions.

It also should be observed that the individual States (except perhaps insular Hawaii) lack the capacity to inspect and regulate international or interstate imports and have no authority to limit interstate commerce as the Federal government has. Thus, as a practical matter, the States are largely powerless to prevent constrictor snakes or other injurious species from being moved interstate, so long as they can be legally imported into and sold in other States. In short, State laws could provide no adequate "backstop" if USARK's Prayers for Relief (*b*) and (*c*), *supra*, are granted and the Federal power to regulate interstate commerce is stripped away.

    **III.**    ***Amici* Have Interests in Pending Regulatory Proposals that Will Be Potentially Injured by the Outcome of this Case**

*Amici*'s concerns are not academic; they are grounded in real interests. A NECIS Coalition Member, Defenders of Wildlife, filed a still-pending formal legal Petition for Rulemaking with the Service, endorsed by *Amici* and NECIS, seeking injurious species listing for traded amphibians that have not been certified as free of the deadly chytrid fungus, *Batrachochytrium dendrobatidis*.[13] If USARK were to prevail on its Counts One and Two, that result would cut the potential scope of that Petition effectively in half, rendering it impotent to regulate any interstate commerce in infected amphibians. That could drastically weaken the protection that the *Amici*-supported Petition for Rulemaking could provide from this deadly pathogen threatening America's amphibians, including threatened and endangered amphibians under the ESA.

In addition *Amici* have supported at least two other proposed injurious species listings. One includes ten invasive freshwater fish species and one invasive crayfish that the Service has repeatedly stated its intent to regulate in one listing package.[14] Some of those species already are in commerce within the United States. If USARK prevails on Counts One and Two, the listing of these eleven species will become ineffective as far stopping their spread via ongoing commerce within the nation.

---

[13] USFWS Notice of Inquiry, 75 Fed. Reg. 56975-56976 (Sept. 17, 2010) re Defenders of Wildlife, Petition to the Secretary of the Interior: To List All Live Amphibians in Trade as Injurious Unless Free of *Batrachochytrium dendrobatidis, available at* http://www.fws.gov/injuriouswildlife/pdf_files/Petition_Salazar_Bd_amphibian.pdf (last visited Apr. 11, 2015)

[14] White House Office of Management and Budget, *Injurious Wildlife Species; Listing 10 Freshwater Fish and 1 Crayfish, Proposed Rule Stage*, RIN:1018-AY69, Unified Agenda of Regulatory and Deregulatory Actions (Fall 2014), *available at* http://www.reginfo.gov/public/do/eAgendaViewRule?pubId=201410&RIN=1018-AY69 (last visited Apr. 11, 2015)

The other proposed listing is to regulate a deadly new Asian-origin fungal pathogen, *Batrachochytrium salamandrivorans*, which, if introduced and transported among the continental States, would likely decimate North America's salamander populations.[15] The eastern United States are the global center of salamander diversity. There still is no official USFWS support for this proposal, thus, a Petition for a listing is under potential consideration. Plainly, as with the other examples above, the scope of such a Petition - and the very purpose of seeking this new Lacey Act listing by the USFWS – will be seriously undermined if USARK prevails on Counts One and Two. If *B. salamandrivorans* incursions then occur within the continental United States, under USARK's interpretation the USFWS could do nothing to block interstate trade or transport of diseased salamanders. That would be a recipe for ecological disaster.

### IV. A Strong Public Interest is Associated with Continued Implementation of the Full Final Rules for the Eight Listed Snakes

It is well-recognized that injunctive relief is not available when the moving party is unable to show that the public interest would be served thereby. *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011). Rather than being served, the public interest would be harmed by injunctive relief blocking continued implementation of the full final rules for the eight listed snakes.

*Amici* note for the Court that during the pendency of the <u>nine</u> year listing process (2006-2015) it appears that two others among the nine proposed species have invaded elsewhere: the Northern African python (*P. sebae*),[16] northwest of Miami, and *B. constrictor* in western Puerto

---

[15] Andrew Revkin, *Riled herpetologists press Obama Administration to protect America's salamanders from a fungal threat.* New York Times, DotEarth (Mar. 21, 2015), *available at* http://dotearth.blogs.nytimes.com/?_r=0 (last visited Apr. 11, 2015)
[16] NBC6 (Miami, FL) News, *Invasive Rock Pythons South Florida's Newest Threat*, Television news and article (Dec. 20, 2013), *available at* http://www.nbcmiami.com/news/Invasive-Rock-Pythons-South-Floridas-Newest-Threat-236697881.html (last visited Apr. 11, 2015)

Rico.[17] There is a strong public interest in seeing no injunction imposed against fully implementing the Service's already excessively delayed regulations, as more delay could result in more new invasions. This would foreseeably harm especially *Amici* NAA and The Wildlife Society, whose members include many natural area managers seeking to protect our native wildlife heritage. Some developments connected to this particular harm:

a) A 2012 published study revealed that rates of establishment for escaped or released reptiles are significantly higher than was previously generally understood.[18] In the past it was commonly assumed that only approximately 10% of introduced species establish wild populations successfully; this study showed that the danger of successful establishment and breeding for introduced reptiles is actually above 40%. In short, there is a very high risk of new invasions from constrictor snake escapes and releases.

b) Large constrictor snakes are top predators that consume America's wildlife, as well as pets and domestic species, including, but not limited to, bobcats, deer, alligators, raccoons, rabbits, muskrats, possum, woodrats, mice, ducks, egrets, herons and songbirds. The Burmese python invasion is directly undermining the multi-billion dollar, nationally-supported, Everglades restoration project because the monitoring and success of that project are tied to measures of native wildlife "indicator" populations, which are now being consumed *en* masse by these pythons. One study indicated that after a decade

---

[17] R. Graham Reynolds et al., *Genetic analysis of a novel invasion of Puerto Rico by an exotic constricting snake*. 15 Biological Invasions 953-959 (2013), *available at* http://pubs.er.usgs.gov/publication/70039860 (last visited Apr. 11, 2015)

[18] Rodrigo B. Ferreira et al., *Global assessment of establishment success for amphibian and reptile invaders*. 39 Wildlife Research 637-640 (2012), *available at* http://www.academia.edu/4230511/Ferreira_et_al._2012-_Global_assessment_of_establishment_success_for_amphibian_and_reptile_invaders (last visited Apr. 11, 2015)

of colonization, pythons in the Everglades have caused significant declines, eliminating as much as 99% of populations of the area's once-common small and medium sized mammals.[19]

c) One set of the 2009 USGS Report findings stand out. Those are the clear threats each of these snakes pose to native species protected under the ESA. The USGS Report states:

> *...the greatest environmental impact of invasion by giant constrictors would be predation on endangered species, either via further endangerment or outright extinction.*[20]

*Amici*, who are intent upon saving America's native species from further endangerment or extinction, have a strong interests in preventing further such invasions and in seeking to halt the ongoing decimation of ESA-protected species and other native wildlife associated with the snake invasions. There is high public awareness of this issue as well, as reflected in extensive media coverage.[21]

USARK et al. have alleged some private interests, yet have made no showing of a strong public interest in reversing the Service's listing rules. This is not surprising because only a tiny fraction of the public's potential interest in owning a reptile is affected by the snake listing rules. At least 700 different reptile species are in the import trade.[22] The listings in 2012 and 2015 have

---

[19] Michael E. Dorcas et al., *Severe mammal declines coincide with proliferation of invasive Burmese pythons in Everglades National Park.* 109 Proc. Nat'l Acad. Sci. 2418-2422 (2012), *available at* http://www.pnas.org/content/109/7/2418.full.pdf , (last visited Apr. 11, 2015)
[20] USGS Report, *supra*, note 7, at 255-57.
[21] For a retrospective review of press and public interest, see: Clyde Haberman, *The snake that's eating Florida*. New York Times. Retro Report. Article and online video, (Apr. 6, 2015), *available at* http://www.nytimes.com/2015/04/06/us/the-burmese-python-snake-thats-eating-florida.html (last visited Apr. 11, 2015)
[22] Defenders of Wildlife, *Broken Screens - The Regulation of Live Animal Imports in the United States* (2007) pp. 45-46 (table on Non-native Reptiles), *available at* www.defenders.org/publications/broken_screens_report.pdf (last visited Apr. 11, 2015)

restricted five, or at most six, previously-imported reptiles of those 700 from future importation – or less than 1%.[23] There are numerous safer, non-invasive, reptiles that pet purchasers can readily substitute.

In short, there is no public interest associated with Plaintiffs' arguments. This undercuts their attempt to satisfy that required element in order to obtain a preliminary injunction. *Sibley v. Obama*, 810 F. Supp. 2d 309, 310 (D.D.C. 2011).

## CONCLUSION

In closing, *Amici* Center for Invasive Species Prevention, Natural Areas Association and The Wildlife Society reiterate:

- the authority of the USFWS to regulate interstate commerce under 18 U.S.C. §42(a)(1) has been essential to its implementation for many decades;
- a ruling declaring that authority to be *ultra vires* would be devastating to implementation of 27 total current regulatory listings amounting to at least 243 invasive species, and also devastating to several pending Petitions and proposals for new listings;
- this would expose *Amici* and the American public to more environmentally and economically harmful invasions mediated by interstate transport of captive-bred or resident wild populations of listed injurious animals;

---

[23] There has been no known commercial importation of three of the eight listed species, i.e., Southern African python (*P. natalensis*), DeSchauensee's anaconda (*E. deschauenseei*) and Beni anaconda (*E. beniensis*).

- nothing in the wording, long implementation or legislative history of 18 U.S.C. §42(a)(1) indicates that Congress intended to limit the law in such a way so as to render it so ineffective;

- the Plaintiffs have not demonstrated they are likely to prevail on the merits on their Claims One or Two;

- absent the fully-effective listings for the eight constrictor snakes species, risks of more invasions and environmental and economic harm, as well as serious public safety concerns from these potentially deadly snakes will persist; and

- the interests of *Amici* and the public would suffer from an injunction; this especially will be so in biodiversity-rich areas of the country such as south Florida, south Texas, Hawaii, Puerto Rico and the other insular territories, where the constrictor snakes are most suited to become established as breeding populations.

The Court is requested to take the arguments above into account in this case. Then the Court should deny the preliminary injunction sought by Plaintiffs.

Dated: April 22, 2015.                                                                 Respectfully submitted,

/s/_____

Peter T. Jenkins
(D.C. Bar No. 477229)
Counsel for *Amici Curiae*
4507 Maple Avenue
Bethesda, MD 20814
Phone (301) 500-4383

13