UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES ASSOCIATION OF REPTILE KEEPERS, INC., | ) ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Civil Action No. 13-2007 (RDM) |
| THE HONORABLE SALLY JEWELL, et al., | ) ) ) ) |  |
| Defendants. | ) ) |  |

**MEMORANDUM OPINION**

On May 12, 2015, the Court issued an Opinion (Dkt. 52) granting in part Plaintiffs' motion for a preliminary injunction and directing the parties to submit supplemental briefs addressing the scope of the preliminary injunction and whether the injunction should be stayed to afford Defendants an opportunity to seek interim relief from the Court of Appeals. Based on those submissions and the parties' submissions in connection with the preliminary injunction motion, the Court concludes that entry of the Order that accompanies this memorandum opinion is warranted.

The factual background of this lawsuit and the relevant arguments of the parties are set out in detail in the Court's May 12, 2015, Opinion. In that Opinion, the Court noted that an injunction must be "narrowly tailored to remedy the specific harm shown." *Neb. Dep't of Health & Human Servs. v. Dep't of Health and Human Servs.*, 435 F.3d 326, 330 (D.C. Cir. 2006) (quotation marks omitted). The need for narrow tailoring, moreover, is particularly important in the context of a preliminary injunction or temporary restraining order, where the court has yet

finally to resolve the merits of the dispute. "When a reviewing court" issues a final judgment holding "that agency regulations are unlawful, the ordinary result is that the rules are vacated—not that their application to the individual petitioners is proscribed." *Harmon v. Thornburgh,* 878 F.2d 484, 495 n. 21 (D.C. Cir. 1989). In contrast, when a court issues a preliminary injunction, it acts to preserve the parties' respective rights and interests while the case is pending, and it does not typically declare the challenged rule unlawful or vacate the rule. "A movant's failure to show any irreparable harm," moreover, "is . . . grounds for refusing to issue a preliminary injunction." *Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006).

As the Court explained in its May 12, 2015, Opinion, Plaintiffs have demonstrated that they are likely to succeed on the merits and that they will suffer irreparable harm absent injunctive relief. Dkt. 52 at 49. The Court further found, however, that "Plaintiffs have not submitted any evidence demonstrating that a prohibition on shipments to Florida or Texas of the listed species would cause any irreparable injury," Dkt. 52 at 45 n.10, and that "the balance of equities and public interest factors favor Defendants, at least to the extent shipments of the listed snakes to Florida and Texas are permitted," Dkt. 52 at 49. In light of the narrow tailoring requirement, the Court directed that the parties submit supplemental briefs addressing, among other things, "whether it is necessary or appropriate for the Court to exclude transportation of reticulated pythons and green anacondas into Florida and Texas from the scope of the injunction." *Id.*

Upon review of the parties' supplemental submissions, as well as the evidence submitted in connection with the motion for preliminary injunction, the Court finds that it is appropriate to exclude transportation of snakes into Florida or Texas from the scope of the injunction—that is, not to enjoin enforcement of the 2015 Rule as to transportation of any species into either of those

2

States.

As an initial matter, neither party has identified any authority that holds—or suggests—that the Court should refrain from tailoring the preliminary injunction to the specific harms and equities identified in the pleadings and evidence to date.  Plaintiffs did submit additional evidence in an effort to show that a continuing prohibition on shipments into Texas and Florida would cause Plaintiffs or members of Plaintiff United States Association of Reptile Keepers ("USARK") irreparable harm.  *See* Dkt. 53 at 2-3.  None of this evidence, however, is sufficient to demonstrate irreparable injury that warrants injunctive relief as to shipments into Texas and Florida.  Most notably, Plaintiffs have submitted declarations asserting that the declarants sell listed species to customers in Texas.  *See* Declaration of Robert Clark (Dkt. 53-1) ¶ 9 ("I also have a fairly substantial customer base in Texas"); Third Declaration of Philip W. Goss (Dkt. 53-2) ¶ 5 ("Texas is . . . an important market for these species").  None of these declarations, however, demonstrates that the declarants would suffer "certain, imminent and unrecoverable" economic harm or that the existence of their businesses would be threatened if sales to customers in Texas were prohibited.  *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 53 (D.D.C. 2011); *see Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985) (per curiam).  The declarants have not shown, for example, that they would be unable to make up for lost sales in Texas by making sales elsewhere in the United States or that any net lost sales are "certain" or "imminent."  And, with respect to Florida, Plaintiffs concede that there is no substantial existing consumer market for the listed species.  Third Goss Decl. ¶ 8.

Plaintiffs also argue that some reptile breeders depend on exports that are currently routed through the Dallas/Fort Worth and Miami airports, and that at least three veterinarians qualified to treat reptiles and amphibians are based in Texas.  *See* Third Goss Decl. ¶ 6; Clark Deck. ¶ 7; Second Declaration of Kristopher Brown (Dkt. 53-3) ¶¶ 4-7.  No declarant, however,

3

has demonstrated that he or she lacks alternatives to using export facilities or veterinary practitioners in Florida and Texas. Indeed, there are at least nine qualified veterinarians (Third Goss Decl. ¶ 6) and fourteen designated ports for wildlife exports (50 C.F.R. § 14.12) located outside those States. One declarant states that he would be forced to "forego [an] important partnership" with an exporter in Florida if shipment through Miami were prohibited and, as a result, that he would "drastically limit or stop international sales." Second Brown Decl. ¶ 7. But even that declarant acknowledges that shipping through Florida is his "best," not his only, "alternative" for international export, and that the majority of his annual revenues come from sources other than exports. *Id.* ¶¶ 2, 4. Even though they may suffer some inconvenience, therefore, Plaintiffs have not demonstrated that they will suffer significant uncompensable losses if transportation of the reticulated python and green anaconda into Florida and Texas remains prohibited. To the extent Plaintiffs have demonstrated any such loss, moreover, it is clearly outweighed by Defendants' strong interest in minimizing the risk that additional invasive snake species will become established in Florida or Texas.[1] *See* Dkt. 52 at 48.

On the other side of the balance, Defendants have not made a significant showing that they are likely to suffer significant harm if shipment of listed snakes between States other than Florida and Texas is permitted. Crediting Defendants' own evidence, it appears that the only areas in the continental United States in which it is likely that reticulated pythons and green anacondas can survive indefinitely in the wild are located in Florida and Texas. *See* Declaration of Jeffrey L. Underwood (Dkt. 32-1) ¶¶ 14-15 ("[r]eticulated pythons have a somewhat tropical

---

[1] Plaintiffs further argue that the preliminary injunction should reach shipments by common carrier in which the common carrier either flies over or briefly stops in Texas or Florida. As an initial matter, Plaintiffs have made no showing that there is any probability of enforcement of 18 U.S.C. § 42 to prohibit mere overflight of Texas or Florida. They have also not shown that any common carrier used by any Plaintiff routinely directs interstate shipments through Texas or Florida, or that, if one did, any Plaintiff would be unable to make alternative shipping arrangements.

native distribution, so the area of the mainland United States showing a climate match is exclusively subtropical and limited to southern Florida and extreme southern Texas"; "[t]he regions of the United States with suitable climate [for green anacondas] include Florida, Texas, Hawaii, and Puerto Rico"). Although Defendants assert that reticulated pythons have been sighted in other areas within the continental United States (*see id.* ¶ 14), they have identified no evidence that either the reticulated python or the green anaconda has or could become established outside of Texas and Florida. Because the threat of a new invasive population is the gravamen of Defendants' showing of potential harm, Defendants have not shown that an injunction that leaves in place the current prohibition on transportation of listed species into Texas and Florida would significantly burden the Defendants' or the public interest.

Based on these factual findings, and in light of the Court's obligation to tailor injunctive relief narrowly to remedy the harms alleged, the Court concludes that a preliminary injunction prohibiting Defendants from implementing, enforcing, or otherwise giving effect to the 2015 Rule with respect to interstate transportation within the continental United States except for shipments into Texas and Florida is appropriate.

The parties also disagree regarding the set of persons who should be protected by the injunction. At oral argument, Plaintiffs referred to the Court of Appeals' decision in *National Mining Association v. U.S. Army Corps of Engineers*, 145 F.3d 1399, 1409 (D.C. Cir. 1998), for the proposition that the injunction should extend to third parties, and not merely protect Plaintiffs and members of United States Association of Reptile Keepers. Defendants convincingly distinguish *National Mining Association*, however, on the ground that it dealt with the scope of a *final* injunction, where the court had already held that the rule at issue was unlawful and should be vacated. A final judgment in Plaintiffs' favor might well result in a generally applicable partial invalidation of the 2015 Rule—and not simply a prohibition on application of the rule to

Plaintiffs.  *See id.* at 1409.  However, because the Court has not finally determined that the rule is unlawful and because there is no evidence of irreparable harm to persons other than Plaintiffs or members of USARK before the Court, the Court concludes that its preliminary injunction should be limited in scope to protect only those persons.

In addition, the Court concludes that the preliminary injunction should apply only to shipments within the 48 continental States of two of the listed species, the reticulated python and the green anaconda.  The injunction will not apply to imports or to shipments between the 48 continental States and the District of Columbia, Hawaii, Puerto Rico or any territory or possession of the United States.  And it will not apply to the Beni and DeSchauensee's anaconda, which are not currently found in the United States.

In light of the fact that Defendants have not requested that Plaintiffs be required to post a bond prior to issuance of the injunction, the Court determines that no requirement for a bond would be proper.  *See* Fed. R. Civ. P. 65(c).

Finally, the Court has determined that it is appropriate for the preliminary injunction to go into effect fourteen days from today's date.  This brief period is intended to allow Defendants to seek interim relief pending appeal from this Court and the Court of Appeals.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  May 19, 2015